UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRAL KOTHARI, individually and on behalf of all other persons similarly situated, | <u>ECF CASE</u> |
| Plaintiff, | No.: _____ |
| v. | <u>CLASS AND COLLECTIVE ACTION COMPLAINT</u> |
| CHIMERA SECURITIES LLC, | |
| Defendant. | <u>JURY TRIAL DEMANDED</u> |

<u>NATURE OF THE ACTION</u>

1.      Plaintiff Viral Kothari, through his counsel, Lipsky Lowe LLP, files his Complaint against his former employer Defendant Chimera Securities LLC asserting several claims: actual disability and perceived disability-based discrimination, failure to engage in the interactive process, and failure to reasonably accommodate under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

2.      Plaintiff alleges that Defendant willfully and knowingly violated these anti-discrimination laws when it learned that he was suffering from an anxiety disorder and depression and failed to accommodate his disability or perceived disability, failed to engage in the interactive process and as soon as he requested to work from home because his anxiety and depression began to flare up and he was suffering from insomnia, Defendant terminated him because of his disability and perceived disability.

3.      Plaintiff alleges, on his behalf and other similarly situated current and former employees of Defendant and those who elect to opt into this action under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendant willfully violated the FLSA by (i) failing to pay minimum wage and (ii) failing to pay overtime premium pay.

4.      Plaintiff alleges on his behalf and other similarly situated current and former employees of Defendant, pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendant willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, and (iv) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

<u>JURISDICTION AND VENUE</u>

5.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, supplemental jurisdiction over Plaintiff's Labor Law claims under 28 U.S.C. § 1367, and jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

6.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1) and (2).

7.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

8.      Plaintiff demands a trial by jury.

<u>TOLLING AGREEMENT & ARBITRATION AGREEMENT</u>

9.      On March 7, 2022, the parties entered into a tolling agreement, tolling the statute of limitations of the Class Members' claims from March 7, 2022 to August 12, 2022.

10.      The parties entered into an arbitration agreement, which is unlawful and unenforceable for three separate reasons: (1) it states the prevailing party in any litigation between the parties will be entitled to their attorneys' fees and expenses; (2) that the parties

will equally share the cost of the arbitration; and that (3) Defendants shall select the place of arbitration. The agreement is attached hereto as Exhibit A.

11.     Prior to filing the Complaint, Plaintiff inquired whether Defendant would agree to sever from the arbitration agreement the provisions detailed in Paragraph 10. Defendant will not agree to sever those provisions, leaving the agreement unenforceable and unconscionable.

<u>THE PARTIES</u>

12.     Plaintiff was and is, at all relevant times, an adult individual residing in New York, New York.

13.     Defendant was and is, at all relevant times, a foreign limited liability company, organized and existing under the laws of the State of New York, with its principal place of business at 27 Union Square West, New York, NY 10003.

14.     Defendant is, upon information and belief, a single integrated enterprise that employed Plaintiff and other similarly situated employees and controlled their duties and responsibilities, work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment, at all relevant times.

15.     Defendant is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Defendant is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00.

These goods and materials that have been produced for and moved in commerce, which its employees have handled include computers, paper products and phones.

16.     During all relevant times, Defendant has applied the same employment policies, practices, and procedures to Plaintiff and all other similarly situated employees, including all the Trainees.

17.     During all relevant times, Defendant has been Plaintiff's and other similarly situated employees' employer within the meaning of the FLSA and NYLL.

<u>STATEMENT OF FACTS</u>

18.     Defendant operates a trading firm, located in New York City.

19.     Defendant employs individuals in the positions of "traders" who trade, *inter alia,* equities and options.

20.     Upon information and belief, at all relevant times, Defendant employed at least 100 employees.

<u>Defendant's Training Program</u>[1]

21.     Defendant operates a Trainee Program, during which trainees learn, *inter alia*, how to trade equities on the proprietary trading platform Defendant utilizes, Blink ("Trainees").

<u>Duties, Supervision and Education of Training Program</u>

22.     Each training class has approximately 10-15 Trainees.

23.     Trainees make live trades using funds Defendant provides them, creating an opportunity for Defendant to profit off of the trades the Trainees make.

---

[1] Headers are for organizational purpose only.

24.     Before making a trade, Trainees do not need approval from their supervisors or experienced traders.

25.     Trainees do not have a mentor.

26.     The duties of a Trainee and trader are the same.

27.     The training that that Trainees receive is different from what would be given in an educational environment in many ways, including:

        a.      The training focuses on how to trade using Defendant's proprietary trading software, Blink.

        b.      The training, as described in the training materials, focuses on "common characteristics of Chimera trades"

Duration and Hours of Training Program

28.     The advertised Trainee schedule is Monday to Friday, from 8:30 a.m. to 5:00 p.m., totaling 42.5 hours.

29.     While Trainees are told they may take a lunch break, they are discouraged from doing so and encouraged to eat at their desk while they work.

30.     Most trainees do not have an uninterrupted meal break.

31.     Most trainees eat lunch at their desk while they work.

32.     Trainees work beyond the advertised schedule.

33.     Trainees are told that they are to work for Chimera on a full-time basis and be physically available "during all business hours, plus a significant amount of time before and after business hours, as Trainee's duties require."

34.     Defendant advertises the Trainee program as lasting for 4 months.

35.     Defendant has and will extend a Trainee's Trainee Program if it feels the Trainee needs more training before becoming a trader.

<u>Hiring Trainees</u>

36.     Defendant hires new traders only from its Trainee program.

37.     All of the Trainees have, at least, graduated from college.

38.     No Trainees are in school.

39.     Defendant markets its Trainee program to, *inter alia*, those about to graduate from college and those who recently graduated from college.

40.     Some Trainees join the Trainee program after having already been employed and graduated from college.

41.     Trainees do not receive school credit for completing the Trainee Program.

42.     Defendant, in many ways, creates the clear expectation that Trainees will be hired as a trader after completing the Trainee Program, including:

          a.     The training materials state: "Congratulations and welcome to Chimera Securities! We are delighted that you are joining our organization as a new equity trader. Your role is critical to the continued success of our company."

          b.     The training materials state: "We are looking forward to a long-term relationship and your success at Chimera Securities."

          c.     Before beginning the Trainee program, Trainees complete a document entitled "Employment Application."

          d.     Almost every Trainee who completes the Training Program is hired as a trader.

-6-

e.      More than 80% of Trainees who complete the Training Program are hired as Traders.

Compensation of Defendant's Training Program

43.     Defendant pays the fee for Trainees to take the FINRA Series 57 exam.

44.     Defendant does not pay the Trainees an hourly rate or salary while they are in the Trainee Program.

45.     Defendant does not pay the Trainees overtime premium pay when they work more than 40 hours in a week.

46.     If a Trainee makes a highly profitable trade, Defendant has and will give a percentage of those profits to the Trainee.

Trainee Agreement

47.     The agreement giving to Trainees contain a non-solicitation provision, restricting Trainees for 24 months, after separating from Chimera, from (1) hiring or partnering with anyone who worked at Chimera as a trader or trainer and (2) solicit or induce anyone who Chimera employs as a trader or Trainee from leaving Chimera.

Plaintiff's Employment History

48.     Defendant employed Plaintiff as a Trainee in its Equity Trader Trainee Program ("Program") from September 2020 to February 2021.

49.      For some weeks in the Trainee Program, Plaintiff worked just the advertised work schedule of five days per week from 8:30 am to 5:00 pm, without a lunch break, totaling 42.5 hours.

50.     For other weeks in the Trainee Program, Plaintiff worked beyond the advertised work schedule.

51.     Late December 2020, Defendant extended Plaintiff's Trainee position through February 2021.

52.     During his employment, Plaintiff worked with about 13 other similarly situated Trainees, who were part of his class in the Trainee Program.

53.     Given Plaintiff's strong performance throughout the Trainee Program, Defendant hired him as a Trader in February 2021.

54.     Plaintiff worked for Defendant as a Trader from February 2021 to September 21, 2021,[2] when Defendant discriminatorily terminated him because of his anxiety and depression disability or perception of him having such a disability.

55.     Defendant gave Plaintiff and other Trainees $50 for lunch their first week in the Trainee Program.

56.     When he was in the Trainee program, Defendant gave him a percentage of the profits from his trades.

57.     As a Trader, Plaintiff's compensation was $2,400 per month plus 40% of Plaintiff's overall trading profits.

58.     From speaking with and observing them, Plaintiff knows that the other Trainees in the Trainee Program also worked the same schedule as he did, working more than 40 hours per week.

59.     Upon information and belief, Defendant never kept track of hours worked by Plaintiff or the other Trainees during the duration of the Trainee Program.

---

[2] All date ranges and times in the Complaint are based on Plaintiff's memory and good faith, best estimates.

60.     Despite working these hours, Defendant failed to pay Plaintiff and the other Trainees any wages for their work in the Trainee Program.

61.     Defendant failed to pay Plaintiff at the minimum hourly rate of pay for the hours he worked during the entire duration of the Trainee Program.

62.     Defendant failed to pay Plaintiff overtime premium pay for the hours he worked over 40 per week during the entire duration of the Trainee Program.

63.     Upon information and belief, Plaintiff knows that it is Defendant's policy and practice not to pay its Trainees for work performed during the entire duration of the Trainee Program.

Defendant's Disability-Based Discrimination

64.     In 2019, Plaintiff began experiencing problems with anxiety, depression and insomnia.

65.     In March 2019, Plaintiff began seeing a psychologist and was diagnosed with an anxiety disorder and depression. During this time, Plaintiff began receiving treatment for his anxiety, depression and insomnia. Plaintiff was taking Trazodone, an antidepressant aimed to treat his anxiety and depression and other medication.

66.     In September 2020, before accepting the Trainee position with Defendant, Plaintiff continued to suffer from anxiety, depression and insomnia. However, by regularly going to therapy and taking antidepressant medication, Plaintiff has been able to successfully manage his anxiety and depression.

67.     Despite being diagnosed with depression and an anxiety disorder, Plaintiff was still able to perform the essential job responsibilities and functions as a Trainee and then as a Trader.

68.     Since his employment with Defendant, Plaintiff's performance exceeded expectations. Compared to the other 11 to 12 Trainees of his class who were hired with him, from February to April, Plaintiff was making the most money. From April to his last day of employment, Plaintiff was making the second most money.

69.     On May 5, 2021, during his monthly therapy appointments, Plaintiff told his psychologist that his anxiety and depression were starting to flare up at work and he had to wait till the weekend to feel better as he was not required to be in the office. Plaintiff also noticed that there were dozens of employees at the firm who worked remotely, so it seemed that Defendant would not have an issue if its employees worked remotely.

70.     Plaintiff's psychologist wrote a letter on his behalf dated May 6, 2021, advising Defendant that Plaintiff was "under my professional care and may return to work with the restrictions noted below," which were that Plaintiff "should be allowed to perform his regular work functions from home as needed" and that the restrictions applied for "approximately 6 weeks."

71.     Plaintiff did not immediately hand this doctor's letter to Defendant or Defendant's Head of Human Resources.

72.     On August 1, 2021, while receiving treatment for his anxiety and depression, Plaintiff again informed his psychologist that his anxiety and depression are flaring up again. His doctor then wrote Plaintiff another letter to provide to Defendant, again advising Defendant that "[i]t is recommended that [Plaintiff] be allowed to continue performing his regular work functions from home."

73.     On August 16, 2021, Plaintiff emailed his doctor's May 6 and August 2 letter, including the letter dated May 6, 2021, to Rachel Reidda, Defendant's Head of

Human Resources. In his email, Plaintiff made it clear that he was fine and was not requesting to work from home at that time, but that he wanted to have his letters on file in case a situation arises when he would need to work from home.

74.    At this instance, Plaintiff placed Defendant on notice of Plaintiff's disability, specifically his anxiety disorder, and that he would possibly need to work from home in the near future because of his disability.

75.    On August 17, 2021, Ms. Reidda acknowledged Plaintiff's email and accepted both of his letters without any protest or hesitation.

76.    Throughout his employment, Plaintiff had been able to successfully manage his depression, anxiety disorder and insomnia.  However, on a few occasions, Plaintiff's anxiety did flare up, making it difficult to work in the office and requiring him to work from home. Nevertheless, Plaintiff continued to regularly go to therapy and take antidepressant medication.

77.    On September 21, 2021, Plaintiff's depression and anxiety began to flare up and he was suffering from chronic insomnia. As a result, Plaintiff was not sleeping regularly and needed some time away from the office. Plaintiff decided that he would speak with Ms. Reidda about requesting to work from home for a few days so that he could control his anxiety and alleviate the symptoms of his insomnia.

78.    On September 21, 2021, at 3:00 pm, Plaintiff had a one-on-one meeting with Ms. Reidda to inquire about the process of making a request to work from home. During this meeting, Plaintiff explained that he began suffering from depression and anxiety since 2019 and he has been receiving treatment ever since. Plaintiff also informed Ms. Reidda that his anxiety was getting worse and he explained his need to temporarily

work from home so that he could take some time away from the office and manage his anxiety.

79.     During his September 21 meeting, he asked Ms. Reidda whether she thought it would be a better idea to work remotely for a few days a week or for two weeks instead of making a request to take time off. He reassured Ms. Reidda that he did not want to take time off from work, but he thought a few days working remotely would help him with his anxiety.

80.     Instead of expressing concern about Plaintiff's well-being, Ms. Reidda told Plaintiff that "Management frowns on working from home." Plaintiff reminded her that he had two doctor letters, advising Defendant to allow Plaintiff to "continue performing his regular work functions from home."

81.     Plaintiff reassured her that he only needed to work from home a few days a week to ease his anxiety, a benefit granted to other coworkers, and that he is fully committed to the job and fully capable of doing the job.

82.     In response, despite having accepted Plaintiff's doctor's two letters, Ms. Reidda again told Plaintiff that "Management frowns on working from home," making it clear that Defendant would not be receptive to the idea of allowing Plaintiff to work remotely despite having two doctor letters on file.

83.     Ms. Reidda ended the September 21, 2021 meeting telling Plaintiff that he must talk to management regarding his request. Plaintiff returned to his desk without knowing whether his request would be approved.

84.     Plaintiff was taken aback by Ms. Reidda's refusal to approve his request because he noticed that as many as 50 employees at the company worked from home

without issue and he was aware of several instances when recent hires were allowed to work from home because of medical issues. He was also surprised at her response considering that he had previously submitted two doctor letters, which were acknowledged and accepted by Ms. Reidda, advising Defendant to allow him to work from home "as needed."

85.     On September 21, 2021 at around 3:40 pm, as Plaintiff was returning to his desk, he received a Slack message from Co-Founder Jared Gerstenblatt, asking him to head to his office at 4:05 pm.

86.     At that moment, Plaintiff was concerned about his employment at the company and felt fearful to ask Defendant to accommodate his disability, even with his doctor letters.

87.     At this meeting, Mr. Gerstenblatt seemed displeased and said, "I'm getting to the point, we are going to end this right now." Plaintiff unaware of what Mr. Gerstenblatt was talking about replied, "End what?" Mr. Gerstenblatt responded, "You trading here. It's going to be difficult in dealing with you in the future," evidencing the company's discrimination against him and reluctance to accommodate Plaintiff's disability. Defendant's discriminatory motives then became apparent as Mr. Gerstenblatt said, "Your performance is good. This is not about that . . . it's going to be difficult to deal with you, so we want to end it right now." At that moment, it became clear that Defendant had the intent to terminate Plaintiff's employment due to his actual or perceived disability.

88.     Defendant's discriminatory animus was further demonstrated in the fact that Mr. Gerstenblatt was not interested in hearing about Plaintiff's improvements or management of his depression and anxiety or discussing his job performance. Instead, Mr.

Gerstenblatt attempted to camouflage the company's true discriminatory intent to make it seem that Plaintiff's job performance is the sole reason for his termination. Mr. Gerstenblatt said, "You are a great guy, but we don't trust giving you more capital to trade," which was surprising to hear as Plaintiff had been the second most successful trader from his class since being hired. Furthermore, at the time of this meeting, Plaintiff had already accumulated $55,000 in gross profit in 2021. Despite his depression and anxiety disorder, Plaintiff had been a successful employee at the company.

89.     In other words, Mr. Gerstenblatt's purported explanation for terminating Plaintiff's employment, specifically that the company did not trust him with more capital, is pretext intended to hide the company's true discriminatory reason that Defendant wanted him out of the company because of his known or perceived disability, despite the fact that he was able to do and did do his job.

90.     In less than 2 hours after he requested a reasonable accommodation, Defendant terminated Plaintiff's employment for requesting an accommodation.

91.     Prior to Plaintiff making his request to work from home because of his depression and anxiety disorder, Defendant never gave him any negative work reviews, write ups or evaluations and never criticized his job performance or expressed its lack of trust in Plaintiff trading the company's money. But this all suddenly changed once Defendant started to perceive him as an employee with a disability and wanted to get rid of him.

92.     Defendant had a duty to initiate and engage in the interactive process to reasonably accommodate Plaintiff's actual or perceived disability, instead they terminated him as soon as he made a request for a reasonable accommodation.

93.     Defendant failed to engage in the interactive process, and failed to offer him any accommodation. Instead, it refused to discuss Plaintiff's depression and anxiety disorder, and terminated him in order to avoid accommodating his disability at that moment or in the near future because it did not want to have an employee with a perceived or actual disability.

94.     Defendant's discriminatory actions and inactions caused Plaintiff severe emotional distress, including worsened his anxiety and depression as well as social isolation, loneliness, sadness, fear for his livelihood and emotional pain. Plaintiff's insomnia has also worsened, causing him to experience sleepless nights. Plaintiff has been unable to find work until mid-November 2021.

95.     Defendant unlawfully discriminated against Plaintiff and treated him differently because of his depression and anxiety disorder, which constitutes actual and perceived disability under NYCHRL and NYSHRL.

Labor Law Notice and Wage Statement Violations

96.     Defendant did not provide Plaintiff or the other Trainees with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

97.     Upon information and belief, Defendant did not provide Plaintiff or the other Trainees with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

98.     Defendant did not post at their office up to date poster advising Plaintiff and other employees of their right to a minimum wage and overtime premium pay.

99.     From speaking with them, Plaintiff knows that other Trainees during the Program, like him, were not paid any compensation, were not paid at the statutory minimum wage, were not paid overtime and were not given the required Labor Law notices.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff asserts these allegations and claims on his own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendant employs and has employed who were Trainees in its Program and other comparable positions at any time since March 14, 2016[3] to the entry of judgment in this case, who were non-exempt employees under the New York Labor Law (the "Class Members").

101.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendant's sole control, upon information and belief, more than 50 Class Members exist.

102.    Plaintiff's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

---

[3] Today's date - the six year statutory period - 158 days under the tolling agreement = March 14, 2016.

103.    Defendant has acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

104.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

105.    Plaintiff has the same interest in this matter as all other Class Members and his claims are typical of Class Members'.

106.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a.      Whether Defendant employed Plaintiff and the Class Members within the meaning of the Labor Law;

b.      Whether Defendant failed to pay Plaintiff and the Class Members the statutory minimum wage;

c.      Whether Defendant failed to pay Plaintiff and the Class Members the overtime premium pay for all hours worked over 40 per week;

d.      Whether Defendant failed to provide Plaintiff and the Class Members Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1;

e.      Whether Defendant failed to provide Plaintiff and the Class Members wages statements under Labor Law § 195.3;

f.      Whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiff and the Class Members are employed;

g.  Whether Defendant is liable for all damages claimed hereunder, including interest, costs and disbursements and attorneys' fees; and

h.  Whether Defendant should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

107.  Under 29 U.S.C. § 206, Plaintiff seeks to assert these allegations and claims as a collective action:

> All persons whom Defendant employs and has employed who were Trainees in its Trainee Program and other comparable positions with different titles at any time since March 14, 2019[4] to the entry of judgment in this case, who were non-exempt employees under the FLSA (the "Collective Action Members").

108.  Plaintiff and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.  Defendant employed the Collective Action Members within the meaning of the FLSA;

b.  Collective Action Members performed similar duties;

c.  Defendant willfully or recklessly violated the FLSA;

d.  Whether Defendant failed to pay Plaintiff and the Collective Action Members the statutory minimum wage under the FLSA;

e.  Defendant failed to pay Plaintiff and the Collective Action Members the overtime premium pay for all hours worked over 40 per week under the FLSA;

---

[4] Today's date - the 3 year statutory period - 158 days under the tolling agreement = March 14, 2019.

     f.     Defendant should be enjoined from such violations of the FLSA in the future; and

     g.     The statute of limitations should be estopped or equitably tolled due to Defendant's statutory violations.

<u>FIRST CAUSE OF ACTION</u>
ACTUAL OR PERCEIVED DISABILITY DISCRIMINATION
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
(On Plaintiff's Behalf against Defendant)

109.    Plaintiff repeats every preceding allegation as if fully set forth herein.

110.    At all relevant times, Plaintiff was an "employee" and "person" under the NYSHRL.

111.    At all relevant times, Defendant was an "employer" under the NYSHRL.

112.    Plaintiff's anxiety disorder and its complications and limitations, including, problems with major life activities such as thinking, sleeping, concentrating, interacting with others, learning, daily care, speaking and performing manual tasks, constitute disabilities under the NYSHRL, N.Y. Exec. Law §§ 292(21)(a)-(c).

113.    Plaintiff's request to work from home because of his mental health is a request for reasonable accommodation under the NYSHRL.

114.    With the requested reasonable accommodation, Plaintiff could have performed the essential functions of his job.

115.    For failing to provide a reasonable accommodation to Plaintiff's known disabilities, for discriminating against him for making a request to work from home for mental health reasons, for failing to engage in a good faith interactive process, and for terminating his employment for his actual or perceived disability, Defendant violated the NYSHRL. N.Y. Exec. Law §§ 296(1)(a) and 296(3)(a).

116. By terminating Plaintiff, Defendant violated the NYSHRL.

117. Defendant is liable for the damages that it has caused to Plaintiff due to its unlawful and discriminatory employment practices against him.

118. As a result of Defendant's discrimination, and failure to engage in the interactive process and accommodate his actual or perceived disability, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, medical expenses, lost interest, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

<u>SECOND CAUSE OF ACTION</u>
ACTUAL OR PERCEIVED DISABILITY DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(On Plaintiff's Behalf against Defendant)

119. Plaintiff repeats every preceding allegation as if fully set forth herein.

120. At all relevant times, Plaintiff was an "employee" and "person" under the NYCHRL.

121. At all relevant times, Defendant was an "employer" under the NYCHRL.

122. Plaintiff's anxiety disorder and its complications and limitations, including, problems with major life activities such as thinking, sleeping, concentrating, interacting with others, learning, daily care, speaking and performing manual tasks, constitute disabilities under the NYCHRL, N.Y.C. Admin. Code § 8-102(16)(a).

123. Plaintiff's request to work from home because of his anxiety disorder is a request for reasonable accommodation under the NYCHRL.

124. Instead of accommodating his disabilities, Defendant fired Plaintiff, leading him to suffer emotional distress and further violating the NYCHRL.

125.    In failing to provide a reasonable accommodation to Plaintiff's known disabilities, for discriminating against him for requesting to work from home because of his anxiety disorder, for failing to engage in a good faith interactive process, and for terminating his employment for his actual or perceived disability, Defendant violated the NYCHRL. N.Y.C. Admin. Code §§ 8-107(1)(a), 8-107(15)(a).

126.    By terminating Plaintiff, Defendant violated the NYCHRL.

127.    As a result of Defendant's discrimination, and failure to engage in the interactive process and accommodate his actual or perceived disability, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, medical expenses, lost interest, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

THIRD CAUSE OF ACTION
FAILURE TO PAY NEW YORK MINIMUM WAGE COMPENSATION
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendant)

128.    Plaintiff repeats and realleges every allegation of the preceding paragraphs as if set forth fully herein.

129.    Defendant is an "employer" within the meaning of Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiff.

130.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendant and protect Plaintiff.

131.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendant was required to pay Plaintiff the statutory minimum wage.

132.    Defendant failed to pay Plaintiff and the Class Members the statutory minimum wage for each hour worked, during the entire duration of the Program, making it liable for those hours at the statutory minimum wage.

133.    Defendant is accordingly liable to Plaintiff and the Class Members for the unpaid hourly minimum wage for all their hours worked.

134.    Defendant has willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff the minimum wage.

135.    Due to Defendant's Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

FOURTH CAUSE OF ACTION
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Defendant)

136.    Plaintiff realleges every allegation of the preceding paragraphs as if set forth fully herein.

137.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendant was required to pay Plaintiff one and one-half (1.5) times his regular rate of pay for all hours he worked in excess of 40 per workweek.

138.    Defendant failed to pay Plaintiff and the Class Members the overtime wages to which he was entitled, violating N.Y. Lab Law § 650 and Part 146, § 146-1.4of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

139.    In failing to compensate Plaintiff and the Class Members for all compensable hours worked over 40 in any given week during the duration of the Program,

Defendant violated the Labor Law and the regulations thereunder, 12 N.Y.C.R.R. §§ 146-1.2, 1.4.

140.    Defendant willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the correct amount of overtime wages.

141.    Due to Defendant's Labor Law violations, Plaintiff and the Class Member are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>FIFTH CAUSE OF ACTION</u>
FAILURE TO PAY THE MINIMUM WAGE
UNDER THE FLSA
(On Behalf of Plaintiff and the Class Members against Defendant)

142.    Plaintiff repeats and realleges every allegation of the preceding paragraphs as if set forth fully herein.

143.    Plaintiff consents in writing to be a party to this action under 29 U.S.C. §216(b), which is attached to this Complaint and incorporated by reference.

144.    Defendant employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

145.    Defendant knowingly failed to pay Plaintiff and the Collective Action Members the minimum wages to which he was entitled under the FLSA.

146.    Defendant was required to pay Plaintiff and the Collective Action Members the full minimum wage rate for all hours worked.

147.    Defendant failed to pay Plaintiff and the Collective Action Members at the minimum wage for all hours worked.

148.    Because Defendant's violations of the FLSA has been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit.

149.    As a result of Defendant's FLSA violations, Plaintiff and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. § 216(b), and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CAUSE OF ACTION
FAILURE TO PAY OVERTIME PREMIUM PAY
UNDER THE FLSA
(On Behalf of Plaintiff and the Class Members against Defendant)

150.    Plaintiff repeats and realleges every allegation of the preceding paragraphs as if set forth fully herein.

151.    Defendant was required to pay Plaintiff and the Collective Action Members no less than 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).

152.    At all relevant times, Defendant had a policy and practice of refusing to pay overtime compensation to their Trainees for their hours worked in excess of 40 hours per workweek.

153.    Defendant was aware or should have been aware that the practices described in this Complaint were unlawful, making its violations willful or reckless.

154.    Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

155.    Defendant has failed to make, keep and preserve records with respect to their Trainees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

156.    In failing to compensate Plaintiff and the Collective Action Members for all compensable hours worked, Defendant violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

SEVENTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

157.    Plaintiff repeats and realleges every allegation of the preceding paragraphs as if set forth fully herein.

158.    Defendant willfully failed to supply Plaintiff and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1(a) within 10 business days of their first employment date.

159.    Due to Defendant's violations of N.Y. Lab. Law § 195.1, Plaintiff and the Class Members are entitled to recover from Defendant $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

<u>EIGHTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

160.    Plaintiff repeats and realleges every allegation of the preceding paragraphs as if set forth fully herein.

161.    Defendant has willfully failed to supply Plaintiff and the Class Members with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

162.    Due to Defendant's violations of Labor Law § 195.3, Plaintiff and the Class Members are entitled to recover from Defendant $250.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on his behalf and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.      Accepts jurisdiction over this matter;

b.      Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class Members;

c.      Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by

filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members and tolling of the statute of limitations;

a.      Impanels and charges a jury with respect to the causes of action;

b.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

c.      An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.      An award for unpaid minimum wages and overtime premium pay under the Labor Law and the FLSA;

e.      An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;

f.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

g.      Back pay, front pay and all benefits along with pre and post judgment interest in the amount of at least $300,000.

h.      Compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress in the amount of at least $300,000.

i.      Punitive Damages in order to compensate him for the injuries he has suffered and to signal to other employers that discrimination is repulsive to legislative enactments in the amount of at least $1,000,000.

j.      An award of pre-judgment and post-judgment interest;

k.     An award of costs and expenses of this action, together with reasonable attorneys' and expert fees; and

l.     Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

New York, New York
August 22, 2022

LIPSKY LOWE LLP

<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com
*Attorneys of Plaintiff and the Putative Class and Collective Action Members*